402 S.E.2d 692 (1991)
Lucius Junius WHITE
v.
COMMONWEALTH of Virginia.
Record No. 0050-88-2.
Court of Appeals of Virginia.
March 19, 1991.
Rehearing En Banc Granted April 24, 1991.
*693 William B. Kerkam, III (James A. Baber, III, Bremner, Baber & Janus, on brief), for appellant.
David A. Rosenberg, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BARROW, BENTON and COLE, JJ.
BARROW, Judge.
This is a criminal appeal of convictions of first degree murder, robbery and two charges of the use of a firearm in connection with the murder and the robbery. The principal issue is whether the trial judge erred in failing to require the prosecution to produce a confederate's confession that he, rather than the defendant, actually shot the victim. We hold that the trial court's failure to require disclosure of the confession violated the defendant's due process right to access to all exculpatory evidence in the Commonwealth's possession. We also conclude that it is not necessary to address the remaining two issues because one was not properly preserved and because the other is not likely to reoccur if there is a new trial.
The victim was found shot to death at his home. He was a drug dealer who had sold drugs to other drug dealers, including the defendant, and had become an informant for the police. Various jewelry which he had been wearing on the previous evening was missing. Two pieces of the jewelry, a diamond ring and a gold bracelet, were pawned by the defendant the morning after the victim's body was discovered. At the same time, the defendant showed the pawn *694 broker an unusual Rolex watch, similar to one worn by the victim, but then decided not to pawn it. After his arrest, the defendant told an inmate in the Henrico County jail that he had received $15,000 for killing the victim from other drug dealers who were afraid the victim would testify against them.
Prior to trial, the prosecutor told defense counsel that he had a confession in which a confederate admitted he actually shot the victim but that the defendant was present and that "they did the killing together." Defense counsel filed a motion for discovery which sought, among other things, exculpatory material. In response, the trial court ordered the Commonwealth's attorney to provide the defendant with any exculpatory evidence, but expressly excluded the confederate's confession from that order. The trial court did not examine the confession; therefore, a copy of it was not made a part of the record.
"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Thus, if the confederate's confession was exculpatory, it should have been made available to the defendant.
A confederate's admission that he or she actually killed the victim favors an accused in a murder trial. Id. It may favor an accused on the question of guilt or innocence because it tends to show that someone else, not the accused, committed the crime. Furthermore, even if the confederate's confession implicates the accused as a principal in the second degree, as it did in this case, it may favor the accused on the issue of punishment. Cf. Poole v. Commonwealth, 211 Va. 262, 267, 176 S.E.2d 917, 920 (1970).
The confederate's confession in this case favored the defendant on the issue of his guilt or innocence. Evidence that someone else actually had shot the victim would have directly rebutted the prosecution's contention that the defendant had done so. If evidence of that fact also placed the defendant at the scene, this would not have been sufficient in itself to establish any criminal responsibility of the defendant. Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888 (1983). Even if the confederate's confession included evidence that the defendant and his confederate "did the killing together," as described by the prosecutor, the jury would have had to believe that portion of the confederate's confession in order to find the defendant a principal in the second degree.
The confederate's confession contradicted the prosecution's theory of the case. All of the evidence presented at trial by the prosecution pointed to the defendant as the actual murderer; there was no evidence that anyone else was present. The confederate's confession suggested two contrary theories, both of which were favorable to the defendant depending on how much of the confederate's confession the jury found credible: that the defendant was present, aiding and abetting; or that he was merely present.
Furthermore, the confederate's confession was favorable to the defendant on the issue of punishment. Evidence that would have permitted the jury to conclude that the defendant was a principal in the second degree instead of the actual murderer was a circumstance in mitigation of the sentence imposed.
The Commonwealth argues that the prosecution did disclose the exculpatory portions of the confederate's confession and that the defendant cannot contend otherwise because there was no proffer of any other parts of the confession. We disagree. The brief description of the confession by the prosecutor was conclusory and did not satisfy the obligation to produce the exculpatory material; however, it was sufficient to permit a determination of its exculpatory nature. The Commonwealth's position is untenable as it would require the defendant to have access to the very confession, the production of which the defendant seeks, in order to pursue an appeal.
*695 Even though the confession is exculpatory, it also must be material in order to justify a new trial. In determining materiality, the standard of materiality applicable to post-conviction attacks is applicable even though this is a direct appeal. Correll v. Commonwealth, 232 Va. 454, 465, 352 S.E.2d 352, 358, cert. denied, 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987); Robinson v. Commonwealth, 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986); but see Robinson, 231 Va. at 158-59, 341 S.E.2d at 169 (Compton, J. dissenting); People v. Morris, 46 Cal.3d 1, 30 n. 14, 756 P.2d 843, 861 n. 14, 249 Cal.Rptr. 119, 137 n. 14 (1988). Under this standard, the evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).
The potential significance of the withheld confession is indicated by a question from the jury during its deliberations. The jury inquired:
Please clarify. If accused was present at time of murder but did not actually pull the trigger, can he be convicted of first degree murder?
While discussing the jury's question, the prosecutor told the trial court: "I'm not real sure where they got the idea that somebody else was involved." The jury never knew what may have been the true story because the prosecution was permitted to withhold from the defense evidence that was inconsistent with its own theory.
By allowing the prosecution to withhold evidence that may have tended either to exculpate the defendant or reduce his punishment helped to "shape a trial that ... [bore] heavily on the defendant." Brady, 373 U.S. at 87-88, 83 S.Ct. at 1197. It cast "the prosecutor in the role of an architect of a proceeding that [did] not comport with standards of justice." Id. at 88, 83 S.Ct. at 1197.
Even if the confederate's confession was inadmissible, it may have affected the defendant's trial preparation. A factor in determining the materiality of undisclosed information is "[a]ny adverse effect that the prosecutor's failure to respond might have had on the preparation and presentation of the defendant's case." Bagley, 473 U.S. at 683, 105 S.Ct. at 3384.
An extra-judicial statement may be vitally important in the preparation and conduct of a criminal trial. It may identify witnesses and other resources for further investigation. It may be used to refresh a witness' recollection. Harrison v. Middleton, 52 Va. (11 Gratt.) 527, 545 (1854). It may be used under certain circumstances as evidence of a past recollection recorded. Farmer v. Commonwealth, 205 Va. 609, 610, 139 S.E.2d 40, 42 (1964); C. Friend, The Law of Evidence in Virginia § 18 (3d ed.1988).
Such a statement may also be used as a basis for cross-examining witnesses. In this case, defense counsel's attempt to cross-examine the police officer in charge of the investigation concerning the existence of the confederate's confession was thwarted when the Commonwealth objected. The trial court allowed the question with the condition that the Commonwealth would have "then every right to show the extent of that statement ... that somebody else pulled the trigger but that your man was there."
With only the Commonwealth attorney's limited disclosure of the content of the confession, defense counsel did not know "the extent" of the confession, the precise manner in which the confession placed White at the crime scene, or even the accuracy of the prosecutor's characterization. Denying defense counsel the opportunity to learn the full content of the confession placed him in the position of having to rely solely upon the Commonwealth's summary of the confession while attempting to cross-examine the investigating officer. Faced with a dilemma in which the unknown could prove more damning than the known, defense counsel withdrew his inquiry, stating, "Well, if your Honor please, I don't know at this point what the statement says other than what the Commonwealth has recited it says." Without knowing whether the confession merely confirmed White's *696 presence or culpably implicated him in the crime, defense counsel was deprived of any meaningful opportunity to cross-examine the officer concerning the confession.
In addition, the possibility that any adverse effect on preparation and presentation of the defendant's case might have occurred must be assessed "in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." Bagley, 473 U.S. at 683, 105 S.Ct. at 3384. In this case, we do not know with certainty what course the defense or the trial would have taken had the defense been given the confederate's confession.
It is possible that, even if the defense had obtained the confession, it would have chosen to pursue the same defense that it did at trial, emphasizing the weakness of the circumstantial evidence and the unreliability of the purported confession to a fellow inmate. It is likely, however, that, armed with the confession, the defense would have been able to elicit evidence of the confederate's involvement either through its own witnesses or through cross-examination of the prosecution's witnesses.
Our ability to judge the materiality of the confession is limited, however, by the absence of the full confession. If the Commonwealth's disclosure in fact revealed the entire content of the confession, no further disclosure could be required and we would conclude that the confession was material. The confession, if believed, would have mitigated the defendant's culpability since it would have revealed that someone else shot the victim. It is reasonably probable that disclosure of this confession would have produced a different result, at least on the issue of punishment. Defense counsel, not knowing the complete content of the confession, was forced to elicit it at trial only at an untenable risk.
If, however, the disclosure was not complete, as the Commonwealth's attorney's refusal to disclose would suggest, the undisclosed portion of the confession may have so inculpated the defendant in the crime that its disclosure would not have mitigated his culpability. This Court is placed in the same position as defense counsel when he attempted to cross-examine the police officer about the confession: without knowing its full content, we are unable to measure the full extent of its materiality. Although we know that it was exculpatory, at least in part, we cannot say without qualification whether it was material or not. The materiality of the confederate's confession can only be determined from an evaluation of the entire document in light of all the circumstances.
We conclude, therefore, that the confederate's confession was exculpatory and should have been disclosed to the defendant. Consequently, we must remand this proceeding to the trial court for it to order the Commonwealth to disclose the confession so that the court may determine whether parts of the confession were not initially disclosed and, if so, whether the undisclosed parts of the confession bear upon the question of the materiality of the confession.
The remaining issues raised by the defendant need not be addressed. The first, the admissibility of the defendant's statement to a pawn broker that his father had been shot by the FBI, was not objected to in a timely manner. No objection was made at the time of the question or the answer, and the issue was not raised until after extensive direct examination and cross-examination had followed the introduction of the evidence. It was then offered as the basis for a motion for a mistrial. Had the objection been promptly made, the trial court could have corrected any error with a prompt instruction to the jury. Since this objection came too late and since no good cause has been shown nor any reason for this Court to consider this issue to meet the ends of justice, this issue may not now be the basis for reversal. See Rule 5A:18; Ingram v. Commonwealth, 1 Va.App. 335, 341, 338 S.E.2d 657, 660 (1986).
The defendant's final issue also need not be addressed. He contends that *697 evidence that the defendant's mother had refused to talk to the prosecutor was inadmissible. When this testimony was elicited by the prosecution, the trial court immediately directed the jury to disregard the question and the answer. See Saunders v. Commonwealth, 218 Va. 294, 303, 237 S.E.2d 150, 156 (1977). Since this issue is not likely to reoccur upon retrial, it is not necessary that we address it further.
For these reasons, we vacate the defendant's convictions and remand the proceeding for the trial court to determine the materiality of the confederate's confession. If it is material, the defendant shall be granted a new trial. If not, the trial court shall reinstate the convictions.
Vacated and remanded.
COLE, Judge, dissenting.
I respectfully disagree with the views expressed in the majority opinion. My position requires that I elaborate upon the statement of facts contained in the majority opinion.
On February 10, 1987, between 5:00 and 5:30 p.m., Thagard's wife found him shot to death in his residence in Henrico County. She discovered his body seated on a sofa in the living room. Thagard was killed by a gunshot wound to his head, an execution type murder. Mrs. Thagard last saw her husband the previous night and he was wearing, as was his custom, two bracelets, three rings, and an expensive, unique and unusual watch, a Rolex Presidential with a Porsche face and a diamond bezel. All of the jewelry was missing from the body except one of the rings, which could not easily be removed from his finger. Nothing else was disturbed in the home. The doors were locked and there was no evidence of a forceful entry.
The morning after Thagard's body was discovered, the defendant, White, appeared at a local pawn shop and pawned a diamond ring and a gold bracelet, which Mrs. Thagard identified as "look[ing] like" her husband's bracelet and ring. White also showed the pawnbroker, but decided not to pawn, a Rolex Presidential watch. At trial, this watch, by its unique design, was conclusively identified as the one owned by Thagard.
Originally, White was charged with four felonies: the capital murder of Donald Wayne Thagard in the commission of a robbery while armed with a deadly weapon; robbery of Donald Wayne Thagard of assorted jewelry while armed with a deadly weapon; and two charges of the use of a firearm in each of the above felonies.
Following his arrest, White was confined in the Henrico county jail. While so confined, he made some damaging admissions to an inmate, Hayton Mitchell. White requested that Mitchell come to his cell because he had some questions to ask him pertaining to his case. Mitchell went into White's cell and was shown White's four felony indictments. During the course of the conversation, White made four admissions that were admitted at trial. First, Mitchell asked White if he killed Wayne Thagard. White responded: "Yes, I offed the son of a bitch." Second, White "went on to say that he got $15,000 for killing Wayne Thagard." White further said that the reason for killing Thagard was that some big drug dealers on Church Hill wanted Thagard killed because they were afraid that he would start talking and the people that he was supplying with syrup were afraid that he would start talking. Third, White told Mitchell that the police could not link him to the murder, and the only thing they could link him to was possession of the stolen property. Fourth, White showed Mitchell an address book and said that when the police came to his home to arrest him, he had the book in his possession; Thagard's name was in the book under the letter "W" for Wayne instead of "T" for Thagard; White tore off the part of the page containing Thagard's name and ate it in order to remove any connection between him and Thagard. Mitchell had no way of obtaining this information except from White. At the time of arrest, the police took the address book from White but later returned it to him upon his request. However, the police kept a photocopy of the pages. They confirmed Mitchell's disclosure by checking the copies of the pages and finding that the "W" page had in fact been torn out.
*698 At a time not disclosed in the record, the Commonwealth obtained a statement from Andre Harris, allegedly a co-conspirator with White. Harris admitted that he shot Thagard but that White was present and "they did the killing together."
The defendant filed a motion for discovery eight days before the trial date. The trial court promptly held a hearing on the motion on October 23, 1987. No transcript of the hearing has been filed so we do not know exactly what transpired. We do know that the Commonwealth's attorney verbally advised both the court and defense counsel that he had a statement from Harris wherein Harris admitted that he shot Thagard but that White was present and "they did the killing together." In view of this statement, the Commonwealth advised the defendant that it would amend the capital murder charge to first degree murder to relieve the Commonwealth of the burden of proving the identity of the triggerman. This amendment was made on the day of trial. The trial court ordered the Commonwealth to provide the defendant with any exculpatory evidence, but expressly excluded Harris's statement from that requirement. The defendant did not request the trial court to inspect the statement in camera or to make it a part of the record.
According to the jury's verdict, the trial judge convicted White of first degree murder and sentenced him to fifty years in prison. The court also confirmed the jury verdicts of robbery and two counts of use of firearms and sentenced him to twenty, two, and four years respectively.
The issue in this case is whether the trial court erred in not requiring the Commonwealth to produce for inspection by the defendant the Harris statement. Clearly, the Harris statement is not included within the discovery material covered by Rule 3A:11. The rule specifically states that it "does not authorize the discovery or inspection of statements made by the Commonwealth witnesses or prospective Commonwealth witnesses to agents of the Commonwealth." Rule 3A:11(b)(2).
If there is any duty upon the Commonwealth to produce the Harris statement, as distinguished from disclosing its contents to the defendant, the requirement must emanate from Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. at 1196-97. Further, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." United States v. Bagley, 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The Brady rule is based on the requirement of due process and its purpose is to ensure that a miscarriage of justice does not occur. Id. at 675, 105 S.Ct. at 3379-80. Its function is not to take the place of the traditional adversary system as the primary method by which truth is uncovered. Id.
The United States Supreme Court expounded further upon the Brady rule in Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). During pretrial discovery, Ritchie served the Children and Youth Services (CYS) with a subpoena seeking access to records compiled by CYS involving his charges. CYS refused to comply with the subpoena, claiming that the records were confidential under Pennsylvania law. Id. at 43, 107 S.Ct. at 994. The Pennsylvania Superior Court held that Ritchie's constitutional rights had been violated. It vacated the conviction, remanded for further proceedings, and held that the trial judge should have examined the confidential material in camera and released only the verbatim statements made by the victim to the CYS counselor. On remand, the trial court would have to determine whether the error was harmless. Id. at 45, 107 S.Ct. at 995.
On appeal, the Pennsylvania Supreme Court agreed that the conviction must be vacated and the case remanded to determine if a new trial was necessary. The Court, however, did not agree that the search for material evidence must be limited *699 to the victim's verbatim statements. Rather, it concluded that the defense attorney was entitled to review the entire file to search for any useful evidence. The Court was unpersuaded by the Commonwealth's argument that the trial judge had already examined the file and determined that it contained no relevant information. Id. at 46, 107 S.Ct. at 995.
On appeal, the United States Supreme Court said:
A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. Although the eye of an advocate may be helpful to a defendant in ferreting out information, this Court has never heldeven in the absence of a statute restricting disclosurethat a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See Weatherford v. Bursey, 429 U.S. 545, 559 [97 S.Ct. 837, 846, 51 L.Ed.2d 30] (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one").
Id. 480 U.S. at 59-60, 107 S.Ct. at 1002 (citations omitted).
The United States Supreme Court held that Ritchie's interest and that of Pennsylvania in a fair trial could be fully protected by requiring that the CYS files be submitted only to the trial court for in camera review:
Although this rule denies Ritchie the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file,... he is free to request it directly from the court, and argue in favor of its materiality. Moreover, the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.
Id. at 60, 107 S.Ct. at 1003.
In Briley v. Commonwealth, 221 Va. 563, 273 S.E.2d 57 (1980), a co-defendant made a detailed confession to the police, admitting that he killed the victim and implicating himself, Briley and two others in the robbery, murders, and rapes. The Supreme Court stated: "We do not construe the statements by [the co-defendant] to the police as exculpatory. The statements involved here amounted to a confession by [the co-defendant] of his involvement in the Barton Avenue crimes and an implication of all three Briley brothers. We find nothing in the statement which is of benefit to the defendant." Id. at 575, 273 S.E.2d at 64.
In my view, there has been no suppression of Brady material in this case. The Commonwealth's attorney disclosed the contents of the Harris statement. The defense, at a suppression hearing, requested that the statement be produced for its inspection. The trial court rightfully ruled that the defense was not entitled to the statement. We do not know what arguments were advanced by the parties and we do not have the reasoning of the trial court because the defendant has not produced a transcript of the hearing. In order to prevail in this case, the defendant must prove that his constitutional due process rights have been violated.
In Ritchie, the Supreme Court held that the due process rights of a defendant to Brady material could be fully protected by requiring that the evidence be submitted only to the trial court for in camera review. White never requested the trial court to review the Harris statement in camera to determine whether there was any information in it that should be produced for inspection by the defendant. "Routinely, confidential records are filed for in *700 camera inspection by a trial court and, if necessary, by an appellate court." LeMond v. McElroy, 239 Va. 515, 520, 391 S.E.2d 309, 312 (1990). The appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that errors assigned may be decided properly. Ferguson v. Commonwealth, 10 Va.App. 189, 194, 390 S.E.2d 782, 785 (1990). Faced with persuasive arguments on both sides, I would decline to decide the issue without knowing the nature of the Harris statement. We do not know whether the statement is limited to the Thagard murder or whether it contains information about other ongoing criminal investigations in the Richmond area.
The Commonwealth may have had good reason not to produce the Harris statement. Thagard was murdered because he became a police informant. Since Harris had given a statement to the police implicating White in the killing of Thagard, he obviously was cooperating with them and had become an informant, like Thagard. Further, he may have implicated other drug dealers in criminal activity in the statement. The Commonwealth's attorney would not want to take any chance that Harris would be executed as was Thagard because he had become an informant.
The Commonwealth did not withhold, but in fact disclosed, the contents of the Harris statement that he shot Thagard but that White was present and "they did the killing together." It was, in fact, the defendant who did not want the jury to hear this evidence. On cross-examination, defense counsel asked Investigator Daniel P. O'Keeffe:
Did you receive any statements from any other informants to the effect that they confessed to killing Thagard rather than this boy [White]?
The Commonwealth's attorney objected to the question, but the trial judge overruled the objection and ruled that the defense was "entitled to ask it if you want it, do they have a statement from somebody else that they did the killing, then I think it's only in fairness that they're entitled then to give the later part of the statement, that is, that somebody else did the shooting but that the defendant was present." When faced with this ruling, defense counsel withdrew his question, obviously realizing that disclosure of the full statement would be detrimental to the defendant's case. In my opinion, the record produced by the appellant does not prove any violation of his due process rights.
The defendant further contends that the trial court erred in failing to request sua sponte the production of the Harris statement for a review in camera for a determination by the court whether all or any part of the statement was exculpatory. None of the authorities cited by the defendant in his brief requires the trial judge sua sponte to require the production of evidence for in camera inspection. This argument is without merit.
Even if the failure to produce the Harris statement constituted a violation of White's due process rights, the nondisclosure of such evidence, however, requires reversal "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. at 678, 105 S.Ct. at 3381; accord Correll v. Commonwealth, 232 Va. 454, 465, 352 S.E.2d 352, 358, cert. denied, 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987); Robinson v. Commonwealth, 231 Va. 142, 151, 341 S.E.2d 159, 164 (1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383-84 (Blackmun, J., concurring).
The majority, admitting that the Harris statement was inadmissible in evidence, claims that the statement should have been produced because it may have affected the defendant's preparation. The majority simply asserts that the written statement might have aided defense preparation without specifying the precise manner in which it might have been helpful. Since the defense was advised of the statement and its contents, I fail to see how disclosure of the full written statement could have helped in preparation for trial.
The majority contends that the statement may have identified witnesses and other *701 resources for further investigation. Evidently, the majority speculates that Harris' statement contains something more than reported by the Commonwealth's attorney. The record contains only the statement of the Commonwealth's attorney. The defendant did not file a transcript of the suppression hearing. He did not request an in camera inspection of the statement so that we would have the statement available for review. I would not reverse this conviction on mere speculation.
The majority contends that the statement may have been useful as a means to refresh a witness' recollection. The witness whose memory might have been refreshed is not identified. Again, the majority's assertion amounts to pure speculation.
The majority contends that the statement may have been used as evidence of a past recollection recordedapparently the recollection of Harris. Since the defense did not call Harris as a witness, this argument is without merit.
The majority contends that the statement may have been useful as a means for cross-examining witnesses. It is true that, had Harris testified and made statements inconsistent with his confession, the statement could have been used for impeachment purposes. In Briley v. Commonwealth, the Supreme Court said that the only advantage of a similar statement of the co-defendant was that inconsistencies in his testimony could be pointed out. 221 Va. at 576, 273 S.E.2d at 65. "[T]he Commonwealth is not required to disclose impeachment evidence against a person who will not be called as a witness." Moreno v. Commonwealth, 10 Va.App. 408, 415, 392 S.E.2d 836, 842 (1990). Harris was not called by either the defense or the Commonwealth as a witness. The defendant did attempt to cross-examine Officer O'Keeffe upon the information contained in the statement, but abandoned the endeavor when the trial judge pointed out the detrimental effect of the statement upon the defendant's case.
Finally, the majority contends that if the defendant had been given a copy of the statement, he might have been able to elicit evidence of Harris' involvement through its own witnesses or through cross-examination of prosecution witnesses. The trial court ruled that the defendant could cross-examine Officer O'Keeffe about any statement made to the police in which someone admitted that he or she, not the defendant, did the killing. The defendant did not pursue the issue because it led to evidence that White was present and was a participant in the killing, which would have been devastating to his case. In addition, after the Commonwealth disclosed the content of the statement, the defendant had available to him all of the traditional methods of the adversary system to uncover the truth, such as interrogation of Harris, subpoenaing him as a witness, and calling him as a witness on his behalf.
As previously discussed, a constitutional error occurs, and the conviction must be reversed, only if there is a reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different. Robinson v. Commonwealth, 231 Va. at 151, 341 S.E.2d at 164. In Robinson, the Supreme Court said that we must compare the evidence adduced at trial with what the defendant contends he could have adduced had he been granted the exculpatory evidence. Id. at 152, 341 S.E.2d at 165. When I make this comparison, I find no additional evidence, apart from the statement itself, that could be produced at a new trial. The majority resorts to surmise and conjecture to identify additional sources of evidence. I believe on this record that the outcome of the trial would remain the same.
The Commonwealth's case was based upon circumstantial evidence and Mitchell's testimony. Witnesses described the murder scene, witnesses described the jewelry that Thagard wore the night before he was murdered, and witnesses described the fact that the morning after discovery of the body, White had in his possession the stolen jewelry. Inmate Mitchell testified that White told him in the county jail that he killed Thagard for $15,000 paid to him by drug dealers to silence Thagard.
The defense sought to establish reasonable doubt by attacking Mitchell's credibility, by testimony that White did not possess stolen goods but was the owner of the *702 jewelry, and the fact that no eye-witness placed White at the murder scene. White called two witnesses, Jerry B. Givens and Julia White, his mother. Givens testified that three or four years ago prior to the trial he borrowed for about a week a gold bracelet from White resembling the bracelet admitted in evidence. Mrs. White testified that her husband had some jewelry and at his death, she divided it between her two sons. She testified that the gold bracelet in evidence was one that her husband had given to the defendant. The purpose of this testimony was to show that the jewelry pawned by White was not taken from the body of Thagard. Based upon this evidence, defense counsel made a forceful argument that the evidence was not sufficient beyond a reasonable doubt to convict the defendant.
There has never been any doubt that this was a willful, deliberate, and premeditated murder. In my opinion, if an eyewitness had placed White at the scene of this murder, his defense would have been severely damaged.
I do not believe that White has proven any prejudice. The majority contends that Harris' admission favors the defendant on the question of guilt or innocence because it tends to show that someone else committed the crime and is, therefore, exculpatory. They argue that if the statement also produced evidence of the defendant's presence at the scene, this would not have been sufficient in itself to establish any criminal responsibility. They further contend that even if the statement included the fact that the defendant and Harris "did the killing together," the jury still would have to believe that part of the Harris confession in order to find the defendant a principal in the second degree.
In my opinion, had the jury been given a copy of the Harris statement and believed it in its entirety, it would have found White guilty as a principal in the second degree. The majority does not give sufficient weight to the fact that White possessed the jewelry stolen from Thagard's body and pawned it the morning following the discovery of the body. The majority likewise ignores the strength of White's admissions to Mitchell. In my opinion, there is no reasonable probability that the jury would have believed only the first part of the statement that Harris killed Thagard and ignored the second part that "they did the killing together." Such a finding would have required the jury to have totally disregarded the evidence concerning the stolen property and all of the statements made by White to Mitchell in the Henrico jail. To accept the majority argument, one would have to conclude that the jury would believe only one sentence of the Harris statement and disbelieve all of the other evidence in the case.
White also has failed to show that had the Harris statement been produced there is a reasonable probability of a different result in punishment. The defendant claims that a person guilty of aiding and abetting in the commission of a crime often receives a lesser punishment than the person who is guilty of the crime as a principal in the first degree and that the "triggerman" would usually receive punishment in excess of one who only aided and abetted in the commission of the crime.
The majority disregards the fact that no eyewitness placed White at the scene of the murder or even in the area. Had evidence been introduced placing White at the scene, the Commonwealth's case would have been strengthened, not weakened. Had the jury heard the Harris statement and believed it in its entirety, the jury would have heard evidence of White's participating in Thagard's willful, deliberate and premeditated execution. I do not believe under these circumstances that there is any reasonable likelihood that the jury would have recommended different punishment. Certainly, under these circumstances, I do not believe that White, if he was found to be guilty only as a principal in the second degree, would have received less than fifty years in the penitentiary. In my judgment, White has not shown a reasonable probability that he would have received less than a fifty year sentence in light of the totality of the circumstances.
Several other evidentiary questions are raised by the defendant and I find no merit in any of them.
*703 In summary, I would find that there has been no constitutional violation. I would further find that even had there been a violation, failure to produce evoked no prejudice to the defendant because the non-disclosed evidence does not undermine confidence in the outcome of the trial. Accordingly, I would affirm the judgments of the trial court.

UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT
On April 2, 1991 came the appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on March 19, 1991 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on March 19, 1991 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.