COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Bumgardner
Argued at Richmond, Virginia


ANDRE VASHAWN CARTER, a/k/a DRE
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0076-98-4          JUDGE LARRY G. ELDER
                                         JUNE 29, 1999
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                       Richard B. Potter, Judge

            James T. Maloney (Joseph D. Morrisey;
            Morrisey, Hershner & Jacobs, on brief), for
            appellant.

            Virginia B. Theisen, Assistant Attorney
            General (Mark L. Earley, Attorney General;
            Richard B. Campbell, Assistant Attorney
            General, on brief), for appellee.


     Andre Vashawn Carter (appellant), a juvenile when the

charged offenses occurred, appeals from his jury trial

convictions for first-degree murder, use of a firearm in the

commission of murder, robbery, and use of a firearm in the

commission of robbery.  On appeal, he contends the circuit court

(trial court) erroneously (1) denied his motion to quash the

indictments; (2) admitted evidence of appellant's drug use and

involvement in a prior shooting; (3) denied his motion to

dismiss based on the Commonwealth's failure to produce allegedly

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

exculpatory evidence; and (4) denied his motion for a new trial based on the Commonwealth's reference in closing argument to evidence earlier ruled inadmissible.  For the reasons that follow, we affirm appellant's convictions.

### 1.  MOTION TO QUASH INDICTMENTS

Appellant contends first that the trial court erred in refusing to quash the indictments because he was not allowed to present evidence at his preliminary hearing that he did not commit the crimes charged.  He argues that this amounted to the denial of a proper preliminary hearing and that the charges should be remanded for a new preliminary hearing.  We hold that the trial court committed no reversible error.

Where an accused timely objects, the complete failure to conduct a preliminary hearing for an offense for which an adult accused of a crime has neither waived his right to a hearing nor "been presented or indicted by a grand jury" is reversible error.  Triplett v. Commonwealth, 212 Va. 649, 650-51, 186 S.E.2d 16, 16-17 (1972).  However, pursuant to Code § 16.1-269.1, which provides for the juvenile and domestic relations district court to conduct a preliminary hearing for a juvenile fourteen years of age or older charged with various felonies, including capital murder, "[a]n indictment in the circuit court cures any error or defect in any proceeding held in the juvenile court except with respect to the juvenile's

age." Code § 16.1-269.1(B), (E); see 1996 Va. Acts chs. 755, 914 (amending Code § 16.1-269.1 to add subsections (C), (D) and (E) and providing that amendments apply "to offenses committed and to records created and proceedings held with respect to those offenses on or after July 1, 1996"). Therefore, assuming without deciding that the district court erred in restricting appellant's cross-examination of the witnesses and his right to present evidence to prove that he did not commit the charged crimes and, thus, erred in finding probable cause for capital murder, appellant's indictment in the circuit court cured those defects.[1] Of course, the evidence produced at trial, which was sufficient to support appellant's capital murder conviction, also supported the grand jury's issuance of an indictment for capital murder.[2]

For these reasons, we hold that the trial court committed no reversible error in denying appellant's motion to quash the indictments.

---

[1] We also note that the statute provides for consistent results--if the district court had not found probable cause or had terminated the proceedings by dismissal, the Commonwealth would have been permitted under subsection (D) of the statute to seek a direct indictment in circuit court without having to start over in the district court. In contrast, if the proceedings in juvenile court are terminated by nolle prosequi, "the attorney for the Commonwealth may seek an indictment only after a preliminary hearing in juvenile court."

[2] Appellant does not challenge the sufficiency of the evidence to support any of his convictions.

## 2.  EVIDENCE OF PRIOR BAD ACTS

Generally, evidence tending to show an accused committed prior crimes or bad acts is inadmissible for the purpose of showing the accused committed the crime charged.  See Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988).  However, such evidence "may be admissible if introduced to prove an element of the offense charged, or to prove any number of relevant facts, such as motive, intent, agency, or knowledge."  Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234, aff'd, 17 Va. App. 248, 436 S.E.2d 193 (1993) (en banc).  An accused is not entitled "to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial."  Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984).  "In addressing the admissibility of other crimes evidence the court must balance the probative value of the evidence of the other offenses and determine whether it exceeds the prejudice to the accused.  The court's weighing of these factors is reviewable only for clear abuse of discretion."  Pavlick v. Commonwealth, 27 Va. App. 219, 226, 497 S.E.2d 920, 924 (1998) (en banc) (citations omitted).

Appellant contends that the trial court erred in admitting evidence of his prior drug use.[3]  We hold that appellant waived

---

[3] Appellant also complains that the court improperly limited his ability to elicit testimony about the drug use of the Commonwealth's witnesses.  However, appellant's assignment of

the right to object to admission of evidence of his prior drug use by introducing similar evidence himself. See Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 639 (1970). He testified on direct examination that he smoked marijuana and that marijuana-smoking was a "daily ritual" engaged in by "[e]verybody" in the Baggett household. Appellant's counsel also elicited testimony about appellant's drug use from Sandy Rapier. This testimony did not constitute an attempt to rebut the Commonwealth's evidence regarding his drug use. See McGill v. Commonwealth, 10 Va. App. 237, 244, 391 S.E.2d 597, 601 (1990) (noting that cross-examination or attempt to rebut does not waive previous objection). Appellant concedes on brief that he decided "to introduce similar evidence in his case-in-chief" but contends that this was a "necessary adjustment" based on the trial court's rulings permitting introduction of such evidence by the Commonwealth. We disagree. The rule that waiver results from the introduction of similar evidence is clear.

Appellant also contends that the trial court erred in admitting evidence that he allegedly used the murder weapon to shoot into an occupied vehicle on November 25, 1997, several

---

error asserts only that "the trial court erred in admitting evidence of [appellant's] prior bad acts"; it does not claim that the court erred in preventing him from inquiring fully about drug use by witnesses for the Commonwealth. Therefore, we did not grant appellant an appeal on the latter issue, and we may not consider it on appeal. See Rule 5A:12; Gilley v. Commonwealth, 21 Va. App. 740, 743, 467 S.E.2d 312, 313 (1996).

weeks before the instant offenses.  He argues that his prior use of the weapon was too far removed and that use of the firearm to commit the offense and appellant's presence at the crime scene were not at issue.  He challenges both the trial court's original ruling permitting the introduction of evidence that he possessed and fired the weapon but excluding evidence that he fired into an occupied vehicle and its subsequent ruling that he "opened the door" to the Commonwealth's cross-examining him about whether he fired at an occupied vehicle.  Again, we hold that the trial court committed no reversible error.

"The [Virginia] Supreme Court has consistently upheld the admission of evidence that the defendant committed an additional crime when that evidence connects the defendant to the murder weapon."  Burley v. Commonwealth, 29 Va. App. 140, 144, 510 S.E.2d 265, 267 (1999) (in murder prosecution in which accused "vigorously attacked any testimony linking him to the gun" until just before his arrest, upholding admission of evidence of separate murder committed by accused with same weapon more than a month after charged offense occurred).  Applying this principle in a recent case, we noted that

> [a]ny evidence that linked [the accused] to
> the weapon tended to make his guilt more
> probable.  The more times he was found in
> possession and the closer the occasions were
> to the date of the murder, the more

- 6 -

> convincing the inference that he possessed
> it when [the victim] was killed.

Id. at 146, 510 S.E.2d at 268.

Here, although the record contains direct testimony from Khalif Rodriguez that he saw appellant shoot the victim and statements from other witnesses that appellant admitted the shooting to them, counsel for appellant implied in his opening statement and cross-examination of the Commonwealth's witnesses that the murder weapon, which was found in Michael Baggett's room and did not have appellant's fingerprints on it, did not belong to appellant and that Rodriguez and the other witnesses were lying to protect Rodriguez or Baggett. Here, as in Burley, appellant's possession and use of the murder weapon within several weeks of the murder clearly was probative of whether appellant owned the gun and was the criminal agent in the victim's murder.[4] Therefore, the challenged evidence in appellant's case is less prejudicial than the challenged evidence in Burley, which proved Burley guilty of murder, the same offense for which he was on trial. Here, as in Burley, we hold that the probative value of the evidence regarding the

---

[4] Further, the trial court ruled that evidence that appellant possessed and fired the weapon on November 25, 1996, would be admitted but that the most prejudicial evidence regarding appellant's behavior that day, that he actually shot at an occupied vehicle, would not be admitted, and it did not change its ruling until appellant "opened the door" to further inquiry. See infra footnote 6.

prior shooting was greater than any prejudice resulting from its admission.[5]

Appellant also contends that the trial court erred in allowing the Commonwealth to go beyond the court's earlier ruling and to cross-examine appellant about his shooting at an occupied vehicle. For the reasons discussed above, we hold that the admission of evidence that appellant shot at an occupied vehicle did not constitute an abuse of discretion.[6]

For these reasons, we hold that the trial court did not abuse its discretion in admitting evidence of the November 25, 1996 shooting.

### 3. EXCULPATORY STATEMENTS

The Due Process Clause of the United States Constitution requires the Commonwealth to disclose to a criminal defendant

---

[5] In Burley, the trial court gave a cautionary instruction, which reduced the prejudice resulting from admission of the other crimes evidence. Here, appellant did not request a cautionary instruction.

[6] Further, we hold that the trial court did not abuse its discretion in ruling that appellant opened the door to such cross-examination when he took the stand and testified that he was "shocked and confused" when he thought Baggett or Rodriguez had shot someone at the rest stop from the car. After such testimony, the Commonwealth was entitled to explore what aspect of that behavior supposedly shocked appellant and why. When appellant answered yes to the Commonwealth's question, "It shocked you that a gun would be fired from your car at another human being?" the Commonwealth was entitled to question first appellant and later Justin Velize about the November 25, 1996 incident in which appellant allegedly shot at an occupied vehicle.

exculpatory or favorable evidence and provides that failure to disclose such evidence may require reversal where that evidence is material to either guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998); see Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977). Exculpatory evidence includes evidence that impeaches the credibility of a witness for the Commonwealth. See Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986).

Exculpatory evidence is "'material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome [of the trial].'" Taitano v. Commonwealth, 4 Va. App. 342, 349, 358 S.E.2d 590, 593-94 (1987) (citations omitted). In addition, the court must "assess the reasonable probability of a different result in 'light of the totality of circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the [nondisclosure].'" Id. at 349, 358 S.E.2d at 594 (citation omitted). This test requires that the effect of the suppressed evidence be considered collectively. See Kyles v. Whitley, 514 U.S. 419,

- 9 -

436, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995). No Brady violation occurs where defense counsel knew about exculpatory evidence "in sufficient time to make use of [it] at trial." Read v. Virginia State Bar, 233 Va. 560, 564, 357 S.E.2d 544, 546 (1987).

We hold, under the totality of the circumstances, that appellant received all exculpatory evidence in time to use it effectively at trial and that no reasonable probability exists that the outcome would have been different if the Commonwealth had disclosed the more detailed witness statements prior to trial. The challenged statements had value only as impeachment evidence and did not indicate that appellant did not commit capital murder. The record reflects that appellant made no request for a continuance at any time during the trial. It also reflects that the trial court granted all recesses appellant requested to allow him to examine the disputed statements and granted all requests to recall witnesses for further cross-examination based on those statements.

Appellant received a brief summary of Rodriguez's pretrial statements before trial and received the actual statements before cross-examining him; appellant was able to cross-examine him thoroughly about any claimed inconsistencies.[7] Although

---

[7] Appellant contends that a handwritten and handcorrected statement made by Rodriguez on January 8, 1997, was never produced at appellant's trial but was introduced at Rodriguez's

- 10 -

appellant received Rodriguez's letters to Albert Richardson after Rodriguez had testified, appellant did not ask to recall Rodriguez to cross-examine him about the statements. Appellant recalled Baggett after receiving his two pretrial statements and had an opportunity to cross-examine him fully. Regarding Stacey Jones' statement, although appellant received the statement after Christopher Payne testified, appellant did not ask to recall Payne for further cross-examination, and appellant simply read Jones' statement into the record rather than calling Jones to testify. Appellant also chose to follow the same procedure with the statements of Eva McDonnell and Edward James Wesley. Finally, appellant was aware before trial that Vincent "Speedy" Williams had said Baggett reported being in the restroom at the time of the murder, and appellant was able to cross-examine Williams about this statement at trial.[8]

---

subsequent trial. The record on appeal indicates, however, that this statement was part of Commonwealth's exhibit 19A, which, although not admitted at trial, was reviewed at trial by counsel for appellant.

[8] Appellant also challenges the Commonwealth's failure to produce the pretrial statement of Williams at any stage of the proceedings. We hold that appellant failed to take the necessary steps to present a complete record of this issue for review on appeal. See, e.g., Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785 (noting general duty of appellant to furnish complete record), aff'd in part and rev'd in part on other grounds, 240 Va. ix, 396 S.E.2d 675 (1990). He neither obtained a copy of the statement, if one exists, for inclusion in the record on appeal nor furnished evidence that he took the necessary steps to obtain the statement from an entity that had actual or constructive possession of it.

- 11 -

Finally, the record reflects that appellant had actual or constructive knowledge of the bulk of these witnesses' allegedly inconsistent statements before he took the stand. He had Baggett's first statement, the statements of Rodriguez and Jones, and summaries of the statements of Williams and McDonnell before he testified in his own behalf.

---

Reasonable inferences from the record indicate that the Naval Criminal Investigative Service (NCIS) questioned Williams when the ship aboard which he was stationed docked in San Diego in April 1997. When the Commonwealth attempted to question Williams further at trial about having made such a statement to NCIS, appellant objected, and more detailed testimony was not allowed.

No evidence establishes that the Commonwealth had a copy of this statement. Compare White v. Commonwealth, 12 Va. App. 99, 101-05, 402 S.E.2d 692, 694-96, aff'd, 13 Va. App. 284, 410 S.E.2d 412 (1991) (en banc) (remanding to trial court to receive and review exculpatory confession of co-defendant where prosecutor had told defense counsel he had the confession but refused to produce more than a summary of it). Further, the record makes clear that appellant knew about the statement before the trial was over, but he did not request a continuance to attempt to subpoena the statement from NCIS and did not attempt to subpoena the statement from NCIS after trial.

After trial, appellant moved the court to conduct an in camera review of the Commonwealth's files for exculpatory information not produced, but the court denied the motion. Although the Commonwealth said it would not object to the court's sealing a particular undisclosed statement for transmission with the appellate record, appellant did not specifically ask the court to employ such a procedure.

Because appellant failed to take necessary steps to make Williams' statement, if one exists, available for our review on appeal, we are unable to determine whether it contained additional exculpatory evidence, beyond what the Commonwealth provided in summary form before trial, which would have established a reasonable probability of a different outcome at trial.

Appellant did not have Baggett's second statement or the statement of Wesley until after he testified.  However, Wesley's statement that Baggett was in the bathroom during the murder was merely cumulative of the pretrial statements of McDonnell and Williams, and appellant had received summaries of those statements prior to trial.  Therefore, we hold that appellant's earlier receipt of Wesley's statement would not materially have affected his decision to testify.  We also conclude that appellant's earlier receipt of Baggett's second statement would not materially have affected his decision to testify.[9]

Finally, reviewing all late disclosed evidence as a whole, we conclude that no reasonable probability exists that the outcome of trial would have been different if the Commonwealth had disclosed the disputed witness statements prior to trial.

---

[9] Assuming without deciding that appellant's brief accurately characterizes Baggett's pretrial statements and trial testimony, the Commonwealth's prior answers to appellant's discovery request and Baggett's first statement to police--provided to appellant before appellant took the stand--contained all the information necessary for appellant to conclude that nine of the thirteen pretrial statements listed in his brief were inconsistent with Baggett's trial testimony.  The only alleged inconsistencies which could not have come to light until appellant received Baggett's second statement were listed in appellant's brief as (h), (k), (l) and (m).  However, our careful review of the record indicates that these four alleged inconsistencies either were not actually inconsistent with Baggett's trial testimony or were insufficient to establish a reasonable probability that the outcome of the trial would have been different had they been disclosed before appellant testified in his own behalf.

## 4. EVIDENCE REFERENCED IN CLOSING ARGUMENT

Lastly, appellant contends that the trial court erred in not granting his motion for mistrial after the Commonwealth's attorney referred in closing argument to evidence ruled inadmissible. We hold that this argument is procedurally barred. Although the prosecutor referred to the challenged testimony twice during closing argument, counsel for appellant waited until after the jury retired to move for a mistrial. Under settled principles, the motion was untimely and the trial court properly denied it. See Cheng v. Commonwealth, 240 Va. 26, 39, 393 S.E.2d 599, 606 (1990) (holding that "[a] motion for a mistrial [based on the prosecutor's improper comments or conduct during argument] is untimely and properly refused when it is made after the jury has retired").

For these reasons, we hold that the trial court did not err in denying appellant's motion to quash the indictments, admitting evidence of appellant's prior bad acts, or denying appellant's motion to dismiss and motion for a new trial. Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>