COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Frank and Clements


BEVIN R. ALEXANDER, JR.

                                        MEMORANDUM OPINION*
v.    Record No. 1299-01-3                  PER CURIAM
                                         NOVEMBER 20, 2001
PAMELA CRAIG ALEXANDER


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    A. Dow Owens, Judge Designate

            (H. David Natkin; H. David Natkin, P.C., on
            brief), for appellant.

            (David W. Shreve, on brief), for appellee.


     Bevin Alexander (appellant) contends the trial court erred

in:  (1) failing to reduce his child support payments; (2)

awarding child support without considering the child support

guidelines; (3) awarding child support, medical reimbursement and

college expenses without considering his ability to pay; (4)

requiring him to pay out-of-state college expenses; (5) entering a

judgment against him for medical expenses; (6) refusing to modify

the original separation agreement to reflect his change in

circumstances; and (7) awarding appellee attorney's fees.  Upon

reviewing the record and briefs of the parties, we conclude that

this appeal is without merit.  Accordingly, we summarily affirm

the trial court.  See Rule 5A:27.
_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

The parties married on August 6, 1977. Two children were born during their marriage: a daughter, born on May 30, 1982 and a son, born on December 16, 1984. The parties separated on April 15, 1994, and "voluntarily entered into a separation agreement, dated February 6, 1995."[1] On May 23, 1995, the parties executed an addendum amending, in part, the February 6 separation agreement. On June 27, 1995, the trial court entered a divorce decree in which it "affirmed, ratified, approved, and incorporated" the separation agreement and the addendum.

The addendum provides, in pertinent part:

> The Husband agrees to pay support for the minor children and the Wife in the amount of $1,750.00 per month, said amount being due in two equal monthly installments on the 1st and 15th of each and every month. The parties agree that, at the Wife's option, the entire amount of support shall be treated for tax purposes as child support, the Wife reserving the right to reallocate the amount as to spousal support and child support as the children become adults. The parties agree that this amount is modifiable upon a showing of change of circumstances by either party, but the amount of support under any circumstances shall not ever be lower than $1,200.00 a month even after both children reach the age of eighteen (18) years. The parties agree that the maximum amount the Husband will pay as support to the Wife or combined support to the Wife and children will be $2,700.00 unless his gross income exceeds $100,000.00. The parties agree that in calculating the

---

[1] This language was taken verbatim from the June 27, 1995 divorce decree, signed by the parties without objection.

-

support amount, they will not use any percentage of support as the basis for any future calculation and that, every year on the anniversary date of the original agreement, they will review the amount of support to be paid by the Husband to the Wife, exchanging tax returns two (2) weeks prior to this reassessment.

    *        *        *        *        *        *        *

Support, as to the Wife, will continue until her death or remarriage. In the event of her remarriage, child support will be recalculated, but in no event will it be lower than $1,200.00 per month or higher than $2,700.00, unless the Husband's gross income exceeds $100,000.00 a year.

On October 2, 2000, wife petitioned the trial court to reinstate the case on the docket and issue a rule to show cause why husband should not be held in contempt for violating the terms of the decree. On October 4, 2000, the trial court reinstated the case on the docket and ordered husband to appear on October 16, 2000, to show cause why he should not be held in contempt for violating the decree.

On October 11, 2000, the trial court requested "a designation pursuant to an order of disqualification of all of the Judges" in the circuit.

On October 27, 2000, husband filed motions requesting the trial court to determine his spousal support obligation and to reduce his child support obligation.

On November 7, 2000, the Supreme Court designated Judge Owens to preside over the case.

-

On December 5, 2000, the trial court conducted a hearing at which the parties presented evidence.  At the conclusion of the hearing, the trial court ruled as follows:

> I can see no evidence of any fraud or misleading or threats.  It's obvious that [husband's] income has dropped considerably, but when his income was close to what it is now he had agreed to pay twenty-seven hundred dollars.  I think it's quite reasonable to continue to require the twelve hundred-dollar a month payment and he owes an additional four hundred dollars to bring it current.

The trial court also ruled that wife's $702.02 dental bill "is due" and payable by husband within six months.  It took the medical bills under advisement.  Regarding college tuition, the trial court explained,

> [t]here's nothing in the separation agreement that says she can't go outside the state and that he will only pay a portion of her costs if she does go to an in-state college.  There's nothing unreasonable about her selecting the college of her choice that she wanted.  I will require him to pay his pro rata share.  One-third of the bonds that they hold now will be used for each of the succeeding years after this year.

The trial court found wife's attorney's fees reasonable and payable by husband, and allowed husband six months to pay them. The trial court also ordered wife to "provide, through the school, a letter from the principal" regarding the parties' son's performance in school.  The trial court directed wife's attorney to draft an order reflecting the court's ruling.

-

On January 5, 2001, husband filed objections to the proposed draft decree and a motion for reconsideration.

On April 9, 2001, the trial court conducted a hearing on father's objections and motion for reconsideration.

On May 4, 2001, the trial court and parties signed a decree. On May 17, 2001, the trial court entered a final order.

### ISSUE I: CHANGED CIRCUMSTANCES

Husband contends the trial court erred in refusing to reduce his spousal support based on changed circumstances.

Pursuant to Code § 20-109, a trial court may modify the existing terms of spousal support and maintenance upon the petition of either party. However,

> where the parties contract or stipulate to the amount of spousal support and that agreement is filed without objection prior to the entry of the final divorce decree, "no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract."

Pendleton v. Pendleton, 22 Va. App. 503, 506, 471 S.E.2d 783, 784 (1996) (citations omitted); see Code § 20-109(C). Code § 20-109(C) "inhibits the power of the court to award or consider modification of the decree to the extent that spousal support and maintenance are provided for in the incorporated agreement of the parties." White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999) (citations omitted). But cf. Blackburn v. Michael, 30 Va. App. 95, 99, 515 S.E.2d 780, 782

-

(1999) (although parties entered into agreement that was incorporated into decree, the agreement setting forth amount of spousal support expressly provided modification "by Court of competent jurisdiction").

Despite husband's attempt to attack it, the addendum to the property settlement agreement was clear, unambiguous and reflected the parties' intention that although modifiable, "the amount of support under any circumstances shall not ever be lower than $1,200.00 a month."  (Emphasis added.)

In 1995, the year the parties executed the addendum, husband's 1995 W-2 form reflected income of $62,500.  His 1996 W-2 form reflected income of $49,713.  At the December 2000 hearing, husband estimated his income for the year would be between $50,000 and $55,000.  That figure is close to the amount appellant earned when he executed the addendum.  Moreover, in 1996, he made less than what he anticipated his 2000 income would be, yet managed to comply with the terms of the agreement.

Although the trial court acknowledged husband's income had diminished, "'"[c]ourts cannot relieve one of the consequences of a contract merely because it was unwise . . . [or] rewrite a contract simply because the contract may appear to reach an unfair result."'"  Pelfrey v. Pelfrey, 25 Va. App. 239, 245, 487 S.E.2d 281, 284 (1997) (citations omitted); see also Kaufman v. Kaufman, 7 Va. App. 488, 501, 375 S.E.2d 374, 381 (1988) ("A

-

court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result.").

Based on these circumstances, the trial court did not err in upholding the contractual support obligation.

<u>ISSUE II:  CHILD SUPPORT</u>

Husband contends the trial court made no findings pursuant to Code § 20-108.2 to justify its award of child support.

The parties agreed to a unitary amount of support to cover child and spousal support.  The trial court awarded the minimum amount of combined support agreed upon, $1,200 per month.  That amount was above the statutory guidelines figure, and it created a contractual obligation when the parties executed the addendum.  Accordingly, the trial court did not err in refusing to apply the child support guidelines.

<u>ISSUE III:  CHILD SUPPORT, MEDICAL REIMBURSEMENT
AND COLLEGE EXPENSES</u>

Husband contends the trial court failed to consider his financial ability to pay.  He argues that the trial court failed to make the required guidelines analysis and it made no calculations to determine husband's ability to pay.

As explained above, the unitary support amount was a contractual obligation that did not contemplate using the guidelines.  Therefore, the trial court did not err in refusing to apply the statutory guidelines analysis.

-

Husband correctly points out "that the record is devoid of any calculation by the trial court, in writing or otherwise, regarding [his] financial situation or his ability to pay support of any kind."  However, the record fails to show that husband prepared and presented a financial income and expense statement for the trial court to review in light of his argument that he was unable to pay.  See Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part, 240 Va. ix, 396 S.E.2d 675 (1990) (holding that appellant has primary responsibility of ensuring that complete record is furnished to an appellate court so that errors assigned may be properly decided).

<u>ISSUE IV:  COLLEGE EXPENSES</u>

Husband contends the trial court erred in requiring him to pay a pro rata share of his daughter's college tuition at an out-of-state school.

Paragraph 6 of the initial February 6, 1995 Property Settlement Agreement, provided, in pertinent part:

> The parties shall contribute, on a pro rata basis, according to their financial ability, toward the tuition, room and board, clothing, books and required fees for up to a four (4) year program of undergraduate college education or vocational training at an institution subject to the parties' reasonable right of approval, for both children, until either child reaches the age of twenty-four (24).

-

At the December 5, 2000 hearing, husband argued that he "actively and vigorously disapproved" of his daughter's choice to attend an out-of-state school.  Husband contended she was accepted to Radford, a state-supported school, but she chose not to attend; moreover, she refused to apply to other state-supported schools, "particularly Virginia Commonwealth." He asserted that both of those schools were appropriate for her to attend and would have been financially more feasible.

Wife testified that her daughter is currently attending Appalachian State University, but she "particularly wanted to go to Guilford College."  The cost for Guilford was $22,386, whereas the cost for Appalachian State was $12,937.50.  Wife explained that she agreed to an installment contract with and made payments to Appalachian State without any contributions from husband.

Finding nothing in the "separation agreement that says [the daughter] can't go outside the state and that he will only pay a portion of her costs if she does," and finding "nothing unreasonable about her selecting the college of her choice," the trial court required husband to pay his pro rata share.

Based on the terms of the agreement and the facts adduced at the hearing, the trial court did not err in so holding. Moreover, we find no reversible error in the trial court directing the parties to calculate their pro rata shares

-

according to the most recent incomes reported on their respective W-2 forms.

### ISSUE V:  PAYMENTS FOR MEDICAL EXPENSES

Wife presented evidence that, from October 1995 until September 30, 2000, she paid dental premiums totaling $1,702.20 for the children.  From 1995 until 2000, wife paid an additional $4,534 for various medical bills.  Wife was never reimbursed by husband for those expenses.

Paragraph 8 of the February 1995 agreement provides that husband would "maintain health insurance" for the children. That paragraph further provided, "Any medical, dental or orthodontic expenses not covered by such insurance in excess of a yearly amount of $300.00 shall be paid by the Husband."

Under the contract incorporated into the decree, husband was obligated to pay the medical expenses as a unitary support payment to wife.  The fact that wife waited several years to ask for the money did not lessen husband's obligation to pay it.

"Husband may not invoke the principles of estoppel or laches to bar rights granted to wife by the lawful decree . . . ."  Martin v. Bales, 7 Va. App. 141, 147, 371 S.E.2d 823, 826 (1988).  See also Johnson v. Johnson, 1 Va. App. 330, 332, 338 S.E.2d 353, 354 (1986) (stating same).

Husband also contends the trial court improperly admitted and relied on inadmissible hearsay regarding husband's obligation to pay for his son's continued prescriptions for

-

Ritalin. At the December 5, 2000 hearing, husband argued that he never had any input into whether his son should continue to take Ritalin. He explained, "I understand why there is an argument for using Ritalin to control him in school," however, husband contended he always objected to use of the drug.

Wife testified that the parties' son had been diagnosed as having an "attention deficit hyperactivity disorder" for which Dr. Milanovich has been prescribing Ritalin since fourth grade. At the time of the hearing, the son was in tenth grade. According to wife, "h]e has not had behavior problems since he has been" taking Ritalin, and it has "helped him tremendously." According to wife, Ritalin has enabled the son to better "focus his attention" and "complete tasks. . . . without being distracted." Wife averred that the son only takes Ritalin "during school hours" and that she has discontinued providing Ritalin to her son at night and during the weekends. Although she is able to deal with the son's louder and busier behavior on the weekends when he doesn't take Ritalin, the school is unable to deal effectively with the son if he does not take it. According to wife, each time the son forgot to take his Ritalin, the school contacted her regarding poor behavior.

Before ruling, the trial court indicated it would take the past medical bills for Ritalin under advisement. It directed wife "to provide, through the school, a letter from the principal saying anything that he has observed about [the son]."

-

On January 25, 2001, wife filed with the clerk's office a letter from the son's principal, Susan Morrison. Morrison advised that the son's "academic progress indicates that he appears to be very successful while on the medication." "As a professional," Morrison was "concerned about taking him off medication." On March 9, 2001, wife filed a letter from Dr. Milanovich detailing the son's history in school before and after taking Ritalin for ADHD symptoms. Dr. Milanovich noted that the son "continues to be successful academically" taking a single dose of Ritalin in the morning before school.

At the April 9, 2001 hearing, husband sought to strike Dr. Milanovich's letter because he received it too late and because it was inadmissible hearsay. The trial court refused to strike the letter but allowed husband's attorney's request for an "opportunity to address the issues raised in those letters." Husband declined the trial court's invitation to call and cross-examine Dr. Milanovich. As to the Ritalin, the May 4, 2001 decree included the following:

> The additional sum of $299.00, which
> represents the cost of Ritalin for the
> parties' minor child, Craig Alexander, is
> taken under advisement for a period of
> thirty (30) days from April 9, 2001 for the
> Defendant to submit such further evidence
> thereon as he may be advised. . . . If the
> defendant submits additional evidence and
> requests a hearing before May 9, 2001
> judgment will not be entered on the amount
> of $299.00 representing the cost of Ritalin.
> However, if no motion is made or further

-

evidence submitted judgment in the amount of $299.00 will be entered as of May 10, 2001.

By order dated May 17, 2001, the trial court noted that the parties no longer "wished to pursue the motions, which they have previously filed."  It then ruled that the May 4, 2001 decree was final.

Appellant had an opportunity to call and cross-examine Dr. Milanovich, and he had the opportunity to submit evidence to rebut the letters.  He chose not to do so.  Accordingly, the trial court did not err in admitting and considering the letters from the principal and the doctor.

<u>ISSUE VI:  REFUSAL TO MODIFY THE ORIGINAL
SEPARATION AGREEMENT</u>

Husband contends the trial court erred in refusing to allow him to present evidence attacking the contract on the basis that the terms were ambiguous and the alleged lack of intent to pay spousal support until wife remarried or dies.

The trial court found no evidence of fraud, duress or coercion in the execution of the agreement.  Moreover, as explained in I., <u>supra</u>, the agreement between the parties that was incorporated into the decree was unambiguous and clearly articulated the parties' intentions.  "The general rule in Virginia is that parol evidence of prior stipulations or oral agreements is inadmissible to vary, contradict, or explain the terms of a complete, unambiguous, unconditional written contract."  <u>Price v. Taylor</u>, 251 Va. 82, 86-87, 466 S.E.2d 87,

-

89 (1996). Accordingly, the trial court did not err in refusing to hear parol evidence intended to modify the agreement.

### ISSUE VII: ATTORNEY'S FEES

During the December 5, 2000 hearing, wife introduced, without objection, an itemized statement detailing her attorney's fees. The trial court found attorney's fees of $2,981.50 "reasonable" and awarded that amount to wife.

The trial court has broad discretion so long as the attorney's fees award is reasonable under the circumstances. Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987); McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985). Based on the circumstances and equities of this case, we cannot say the trial court abused its discretion in making this award. Accordingly, the trial court did not err.

For the foregoing reasons, the decision of the trial court is summarily affirmed.

Affirmed.

-