COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Felton and Haley
Argued at Richmond, Virginia


ANNA M. LAZARCHIC

v.      Record No. 0458-04-2

RAYMOND F. LAZARCHIC                MEMORANDUM OPINION[*] BY
                                   JUDGE JAMES W. HALEY, JR.
RAYMOND F. LAZARCHIC                     JULY 26, 2005

v.      Record No. 0484-04-2

ANNA M. LAZARCHIC


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

Edward D. Barnes (Anne Brakke Campfield; Aimee S. Clanton; The
Barnes Law Firm, P.C., on briefs), for Anna M. Lazarchic.

Ronald S. Evans (Alexander S. de Witt; Brenner, Evans, & Millman,
P.C., on briefs), for Raymond F. Lazarchic.


The parties cross-appeal issues from the trial court's equitable distribution award.  Anna

Lazarchic, wife, asserts that the trial court erred in the following:  1) in valuing the marital interest

of L&H investments at $204,000 rather than at $276,556; 2) in failing to treat $350,000 husband

withdrew from L&H Investments as a marital asset; and 3) in valuing the Mid-Atlantic Resources

Association stock at a value different than the parties' stipulation.

Raymond Lazarchic, husband, asserts that the trial court erred in the following:  1) in

refusing to enforce the "memorandum of agreement" into which the parties had entered; 2) in

awarding wife periodic spousal support in a sum different from that set forth in the "memorandum

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of agreement"; 3) in awarding wife $35,000 in attorney's fees when the "memorandum of agreement" stated that each party would be responsible for his or her attorney's fees; 4) in fashioning an equitable distribution award contrary to the "memorandum of agreement"; and 5) in valuing the Mid-Atlantic Resources Association, Inc. stock at $59,000 rather than $25,001. We address each of these issues herein.

I.

The parties were married in 1968 in the state of Ohio and thereafter moved to Virginia. Wife filed a bill of complaint on November 28, 2000 seeking a final decree of divorce, spousal support, equitable distribution of marital property, and attorney's fees. Husband filed an answer and cross-bill on December 8, 2000 seeking a final decree of divorce, equitable distribution, and attorney's fees.

After a *pendente lite* hearing, the parties, each represented by counsel, attended a November 12, 2001 settlement conference, and apparently on that date the parties signed the "memorandum of agreement" (the "November memorandum").[1] On November 16, 2001, husband's attorney prepared and faxed to wife's attorney a proposed "Property Settlement Agreement" (the "December agreement"), unsigned by husband, with a December 2001 date left blank. Wife entered certain changes and returned the "December agreement." Husband rejected the "December agreement."

On December 18, 2001 husband filed a "Motion to Enforce Settlement Agreement," referring to the "November memorandum." In response, wife alleged the "November memorandum" was "outdated . . . incomplete . . . [and] a draft," and based upon a failure of husband to disclose his true financial condition.

---

[1] Each party has retained new counsel since the November 21, 2001 meeting.

A hearing on the motion to enforce was held on February 19, 2002. No transcript of this hearing has been provided to this Court.[2] On February 21, 2002, the trial court issued a letter opinion stating: "I am not sure that I can enforce a 'memorandum of agreement' because it contemplates the entry of a former Separation Agreement."[3]

The trial court heard evidence at later hearings on the issues of spousal support, equitable distribution, and attorney's fees. At an evidentiary hearing, each side presented evidence concerning the value of L&H Investments. Wife's expert, William K. Stephens, valued the

---

[2] At a subsequent hearing on March 10, 2003, reference to the February 19, 2002 hearing was made. Husband testified:

> Q: Didn't you already have a hearing sometime afterwards, say, in February or so, 2002, on this exact issue?
> A: We've had some sort of hearing.
> Q: Didn't the judge already rule in this matter with respect to the agreement? Didn't he enter or send you a copy of a February letter from him indicating that he could not enforce the agreement?
>
> MR. SHAPIRO: I will stipulate that there is a letter, Judge, and it speaks for itself. It's in the Court's file. It's the Court's letter of February 21, 2002.
>
> THE COURT: All right.
>
> Q: Based on that, Mr. Lazarchic, was there additional correspondence between your attorney, Mike Ewing or Bill Wood and former attorneys and Ms. Lazarchic's former attorney Susanne Shilling?
> A: Yes.
> Q: And they were trying to negotiate some sort of property settlement agreement, formal agreement?
> A: No. They said Anna didn't agree with this, so it was being changed. I thought we had agreed on something.
> Q: Didn't agree with this agreement that I just gave to you?
> A: No, the former one. This one, I don't really know much about it except that it was sent, yes.

[3] Husband suggests that the word "former" was used in error instead of "formal."

entity at $276,956. Husband's expert, Robert R. Raymond, valued L&H at $96,956. In an opinion letter dated May 23, 2003, the trial judge valued L&H at $204,000.

In that May 23, 2003 letter opinion, the trial judge also found that a $350,000 withdrawal by husband from L&H was not a marital asset. Husband argued that he created a personal liability by withdrawing this amount. Wife argued the money was a marital asset that should be considered in the court's equitable distribution award.

That letter opinion also awarded 50% from the sale of Mid-Atlantic Resources stock to wife. The parties had previously stipulated the value at $78,000. Husband, in a motion to reconsider, advised the court that the stock sold for $25,001 which "ended up being about $50,000 or so less or $59,000 less than what the experts had valued." The court, in the May 23rd letter opinion, stated, "I accept the proffer that the stock sold for $59,000.00 ($29,500 each)." Husband, in a second motion to reconsider, stated that the $59,000 figure was in error and that the stock actually sold for $25,001. Wife argued that the trial court should accept the amount listed on parties' asset exhibits, $78,000, as this amount was agreed to and stipulated by the parties. The trial court denied the second motion to reconsider.

II.

The Supreme Court of Virginia recently held, "When a party seeks to have an issue decided in her favor on appeal, she is charged with the responsibility of presenting an adequate record from which the appellate court can determine the merits of her argument." Pettus v. Gottfried, 269 Va. 69, 81, 606 S.E.2d 819, 827 (2004) (citations omitted). Additionally, in Twardy v. Twardy, 14 Va. App. 651, 419 S.E.2d 848 (1992), this Court held the following:

> This court and the Supreme Court have recently addressed the allocation of responsibility for ensuring a complete record. In a decision by a panel, this court observed that "an appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly."

Id. at 654, 419 S.E.2d at 849-50 (quoting Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part on other grounds, 240 Va. ix, 396 S.E.2d 675 (1990)).

Husband bore the responsibility of providing an adequate record to this Court on the "November memorandum" issue. Husband did not submit either a transcript or a statement of facts from the February 19, 2002 hearing, as required by Rule 5A:8. A record of that hearing is indispensable for this Court to review the decision of the trial court in concluding the "November memorandum" was not enforceable. Accordingly, we decline to address this assignment of error.

The sole argument raised by husband concerning spousal support and attorney's fees is that the trial court erred in setting the amounts in contradiction to the "November memorandum." Our affirmation of the trial court's decision that the "November memorandum" was not enforceable renders husband's argument on spousal support and attorney's fees moot.

III.

Two of wife's assignments of error, that the court erred in evaluating L&H Investments and erred in failing to treat $350,000 that husband received from L&H Investments as a marital asset, are necessarily intertwined.

Husband concedes that L&H is a marital asset. Accordingly, the $350,000 cannot be separate property acquired "for or from the proceeds of the sale of separate property." Code § 20-107.3(A)(1). See Ranney v. Ranney, 45 Va. App. 17, 32, 608 S.E.2d 485, 492 (2005); Courembis v. Courembis, 43 Va. App. 18, 34-35, 595 S.E.2d 505, 513 (2004); Stainback v. Stainback, 11 Va. App. 13, 17, 396 S.E.2d 686, 689 (1990).

An equitable distribution hearing was held on March 26, 2003. Wife's expert, William K. Stephens, valued L&H, as of the date of separation (December 4, 1999), at $276,956. Husband's

expert, Robert R. Raymond, offered a written "limited appraisal" based on the assumption "that information provided by Mr. Lazarchic and others is reliable." That written appraisal valued L&H at $96,956 as of December 31, 2002.

In 2002, husband testified, the L&H real estate was refinanced and he "cashed out" $350,000 which he deposited in a separate account. Husband also testified that he "borrowed" the $350,000. On husband's asset exhibit is stated:

> 4. Cash from L&H refinancing – 2002 - $350,000*
> * Not an asset but liability incurred by H to fund marital settlement.

At trial, husband's expert, Mr. Raymond, testified: "Well, what we actually did is he borrowed the money. So he borrowed it to create a liability, and it created an asset, the net worth of the company did not go up."

In his letter opinion of May 23, 2003, the trial court evaluated L&H at $204,000. In a separate item reference to the $350,000, the court wrote "N/A," and did not equitably distribute the sum.[4] Thus, the $350,000 was not considered by the court as a marital asset, whether a separate item or an enhancement to the value of L&H.

We do not follow the reasoning of husband's expert that husband created a personal liability to L&H, but the net worth of L&H did not increase. The evidence is uncontradicted that husband received $350,000 from marital property. If the $350,000 was a "cash-out," it remained marital property. If it was a loan from L&H, and a personal liability to husband, then the evidence of that indebtedness must be treated as a business asset, i.e., a receivable, thereby adding to L&H's value. Marital property is "all property acquired by each party during the marriage . . . ." Code § 20-107.3(A)(2)(iii).

---

[4] It is not clear whether the trial court meant by "N/A" that the $350,000 was "not an asset" or "not applicable." In either event, the trial court did not classify the $350,000 as a marital asset.

Accordingly, the issue of husband's withdrawal of the $350,000 and the evaluation of L&H are remanded to the trial court.

IV.

In Rowe v. Rowe, 33 Va. App. 250, 532 S.E.2d 908 (2000), this Court stated: "We have stressed that the trial judge in evaluating marital property should select a valuation 'that will provide the Court with the most current and accurate information available which avoids inequitable results.'" Id. at 263, 532 S.E.2d at 915 (quoting Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 790-91 (1991) (additional citation omitted)). This Court held in Rowe that the trial judge abused his discretion when he did not revalue stock on remand based on the most current information.

Here, husband presented uncontradicted evidence that the Mid-Atlantic stock had sold on June 19, 2003 for $25,001. The trial judge did not abuse his discretion by attempting to revalue the stock based on the most current information. See Wagner v. Wagner, 16 Va. App. 529, 531, 431 S.E.2d 77, 78 (1993) (en banc). However, the trial judge selected a value that was not supported by the evidence. At the hearing on a motion to reconsider, husband presented evidence stating that the stock sold for "$59,000 less than what the experts had valued." The trial judge, in his letter opinion, "accept[ed] the proffer that the stock sold for $59,000.00." Such a finding is contrary to the evidence presented during the hearing, and the trial judge perhaps mistakenly selected this value. We remand to the trial court the issue of valuing the Mid-Atlantic Resources stock.

## V.

Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

<u>Affirmed, in part,</u>
<u>reversed, in part,</u>
<u>and remanded.</u>
