COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


DAVID JAY DIDIO

MEMORANDUM OPINION[*] BY
v.        Record No. 0204-07-2        JUDGE RANDOLPH A. BEALES
DECEMBER 18, 2007

SARA THOITS DIDIO


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

W. Todd Watson (Hargett & Watson, PLC, on brief), for appellant.

G. Russell Stone, Jr. (Aileen F. Tucker; Bowen, Champlin, Carr,
Foreman & Rockecharlie, on brief), for appellee.


David Jay Didio (husband) appeals from a final decree entered on December 21, 2006,

awarding a divorce to Sara Thoits Didio (wife).  He argues that the trial court erred (1) in

granting a divorce to wife rather than to husband; (2) in failing "to fairly and fully consider the

evidence" related to equitable distribution presented by husband; (3) in considering husband's

student loans as income; (4) in refusing to award husband spousal support; (5) in limiting

husband's visitation with the parties' daughter to the recommendations of the daughter's

therapist and requiring him to pay all costs associated with visitation; and (6) in awarding

attorney's fees to wife.  Wife argues that husband has presented this Court with an incomplete

record, and so his appeal should be dismissed under Rule 5A:25(c)(3).  Finding errors in the trial

court's rulings, we remand for further consideration by that court, consistent with this opinion.

We also deny wife's request for an award of attorney's fees and costs associated with this appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Given the parties are familiar with the evidence, and this opinion is not designated for publication, we limit our discussion of the facts to those particularly relevant to our holding on each issue.

## I. Award of Divorce

Husband argues that the trial court should have granted the divorce on the ground pled in his petition – desertion. He contends the trial court erred in granting the divorce to wife based on the parties having lived separate and apart for one year. We hold the trial court did not err in granting the divorce to wife on the grounds that the parties had lived apart for a year.

The parties agree that they had lived separate and apart for over a year by the time the final decree was entered. They also agree that wife moved out of the marital home while husband was away on a camping trip and that husband did not expect wife to move. They also agree that husband filed for divorce first, and wife then filed a cross-petition.

Although husband claims the trial court erred in awarding the divorce to wife, the court acted within its discretion. When the evidence supports both grounds, a trial court may choose to award the divorce on either ground. As this Court previously explained in Williams v. Williams, 14 Va. App. 217, 220, 415 S.E.2d 252, 253-54 (1992) (footnote omitted),

> The record establishes that the parties had been separated in excess of one year when the trial court granted the divorce on this ground. See Code § 20-91(9). Nevertheless, the husband asserts that his evidence proved the wife's adultery, and he was entitled to this determination by the court, with its attendant effect, if any, on the issues of spousal support and attorney's fees.
>
> Assuming, without deciding, that the husband sufficiently proved the wife's adultery, the trial court was not compelled "to give precedence to one proven ground of divorce over another." Robertson v. Robertson, 215 Va. 425, 426, 211 S.E.2d 41, 43 (1975). It is well established that "where dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce." Lassen v. Lassen, 8 Va. App. 502, 505, 383 S.E.2d 471, 473 (1989) (citing Zinkhan v. Zinkhan, 2 Va. App. 200, 210, 342 S.E.2d 658, 663

- 2 -

(1986)); see Derby v. Derby, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989).

We find the trial court did not err in awarding the divorce to wife on the grounds that the parties had lived apart for over a year.

## II. Equitable Distribution

The evidence in this case was presented via *de bene esse* depositions. No evidence was presented *ore tenus*. When they submitted the evidence to the trial court, both parties also submitted briefs that, *inter alia*, set forth their recommendations for division of the marital estate. The trial court did not enter a pretrial order requiring that these briefs follow a particular structure. Although husband's brief did not address each of the factors in Code § 20-107.3 individually, his brief discussed each asset and the evidence relevant to its characterization as marital, also making a recommendation for division of the assets based on the evidence. Wife's brief discussed the evidence related to each of the statutory factors in turn.

After reviewing the evidence, briefs, and oral argument of the parties, the trial court issued a letter opinion. The letter stated, in part:

> Only Mrs. Didio has presented the Court with an organized summary of the evidence with regard to the equitable distribution factors. The Court is not in a position to parse through evidence submitted by Mr. Didio in this matter in order to provide a comprehensive summary in support of each equitable distribution factor.
>
>        \*  \*  \*  \*  \*  \*  \*
>
> As Mr. Didio has failed to provide the Court with a memorandum or summary illustrating the evidence deemed to be important with regard to each factor, any objections to the scheme of equitable distribution suggesting that this Court has failed to consider all of the equitable distribution factors are deemed waived.

The court then proceeded to address each factor in Code § 20-107.3, stating several times that the "[e]vidence with regard to this factor is set forth more fully below." In the section "below," the

- 3 -

trial court discussed each marital asset and divided it, rather than setting an overall percentage for division of the entire marital estate.[1]

The court's opinion letter discussed at least some of husband's evidence and some argument presented in his brief. Husband, however, points to two specific issues where he contends the trial court did not consider his evidence and argument: (A) the amounts in the parties' financial accounts and (B) husband's payment of the expenses for the parties' horses.

### A. Financial Accounts

The parties presented the trial court with a stipulation regarding the value of various financial accounts as of "the time of separation." After the separation, husband withdrew $49,922 from three of these marital accounts. He testified that he withdrew this money to pay for his living expenses, the mortgage on the home, and the expenses associated with boarding the horses owned by the parties.[2] Husband had been laid off from his job prior to the separation, and the money from his severance package was essentially gone when wife left the marital home. Husband was a full-time student at Virginia Commonwealth University at the time of the separation and did not have a regular income. Wife left the marital home, leaving husband with the expenses associated with the house.

Husband asked that his withdrawals from the financial accounts be subtracted from the stipulated amounts. The opinion letter notes husband's argument that the accounts be reduced "to offset the distributions he took from the accounts to pay his living expenses after the separation." The letter then concludes, "Upon the evidence presented, the Court declines to

---

[1] The trial court did not announce an overall percentage, but rather discussed each asset in turn and determined the appropriate division for that asset. We do note, however, that the trial court divided each asset in half, so that the overall equitable distribution of the assets and debts that the trial court considered was 50% to each party.

[2] We discuss the payments for the horses, *infra*, in § II(B).

grant Mr. Didio an offset in the value of the accounts." This section of the opinion letter did not specifically state whether husband's evidence on this issue was considered.

Wife did not present any evidence to contradict husband's contention that he was not working and needed the money for living expenses and the mortgage. In fact, she agreed that he was unemployed, that he lived in the marital home for approximately a year after their separation, and that he paid at least some of the mortgage during that time. She agreed that the funds from his severance package had been expended by the time she left the marital home.

Husband's income tax returns indicated that he paid $2,736.71 in mortgage interest during 2005 and $4,827.43 during 2004. Husband put into evidence a typed sheet listing the various mortgage payments that he made between March 2004 and May 2005, totaling $13,547.24. Husband did not present evidence regarding the reduction in principal during this time nor how much of this amount was late fees, which husband admitted were included in the $13,547.24. "[T]he house was in 'accelerated collections' and the equity line was two months past due" when wife took over the home and the mortgage payments in May 2005.

Husband presented a document detailing his living expenses. He admitted in testimony that he ate out frequently, paid tuition as a full-time student, and gave a $160 bottle of scotch as a gift.

"[E]xpenditure of marital funds for living expenses after separation and before divorce does not constitute waste." Budnick v. Budnick, 42 Va. App. 823, 842, 595 S.E.2d 50, 59 (2004). Therefore, as the trial court did not deduct husband's withdrawals from the stipulated value of the financial accounts, the court effectively found husband either committed waste in his use of these funds or had not proved that the funds were used for a legitimate purpose. See Howell v. Howell, 31 Va. App. 332, 348, 523 S.E.2d 514, 522 (2000) (discussing use of marital funds after the parties have separated). However, the trial court also explicitly stated that

husband's evidence and argument would not be considered, as the court was "not in a position to parse through evidence submitted" by husband, even though husband's brief clearly argued this point and his evidence was presented in basically the same manner as wife's evidence was presented, i.e., through *de bene esse* depositions and exhibits. The trial court announced in its letter opinion that any objections that husband had to the distribution award "are deemed waived."

We find this failure to consider husband's evidence was an abuse of discretion. See Smith v. Smith, 43 Va. App. 279, 286, 597 S.E.2d 250, 254 (2004) ("A decision involving the equitable distribution of marital property 'rests within the sound discretion of the trial court,' and can be overturned only by a showing of an abuse of that discretion." (quoting Owens v. Owens, 41 Va. App. 844, 853, 589 S.E.2d 488, 493 (2003))). Husband's evidence was admitted into the record and legitimately before the trial court for its consideration. Code § 20-107.3(E) requires that a court "consider" various factors when making an equitable distribution award, which requires consideration of the testimony and documents submitted to the court. A trial court cannot arbitrarily ignore (and effectively exclude) one party's evidence. Cf. Campbell v. Campbell, 49 Va. App. 498, 504-05, 642 S.E.2d 769, 772-73 (2007) (finding a trial court's limit on cross-examination of a handwriting expert was an "arbitrary refusal" to allow testimony and, thus, remanding the case). Therefore, we remand for the trial court to examine husband's evidence and to determine how this evidence should affect the distribution of the marital estate and the award of attorney's fees.

### B. Expenditures for the Horses

The parties owned two horses that were ridden primarily by husband and the parties' daughter. Husband testified that he paid all the expenses related to the parties' horses, and wife conceded that she did not make any of these payments. Husband prepared and presented to the

trial court a list of the payments he allegedly made between March 2004 and September 2005 for the upkeep of the horses, including, *inter alia*, "Board" at $400 a month. The expenditures total $10,795.58. Husband and the owner of the boarding farm testified that, instead of paying all of the $400 in cash, husband worked around the farm as partial payment and paid the remainder in cash. No testimony or contemporaneous documentation was provided regarding the other expenses on husband's list, except for husband's general statements.

Husband asked that he be given credit for paying the expenses related to the care of the horses from the time of the separation in 2004 until he moved them to Blacksburg in 2005. He asked that wife be responsible for 60% of the total cost.

In its letter opinion, the trial court noted:

> Mr. Didio has indicated on his exhibit that he paid $400 per month in boarding fees, but this is contradicted by his own testimony that he paid $150 less each month. Mr. Didio testified that he had an arrangement where he would clean the stalls and feed the horses several times per week in order to "work down the price" of the boarding expenses. Mrs. McFarland [the farm's owner] confirmed that Mr. Didio received a $150 reduction in his board fees for doing work with the horses.
>
> \* \* \* \* \* \* \*
>
> Mrs. Didio testified that she suggested selling the horses in order to reduce the financial burden, but "she did not get a favorable response" and Mr. Didio was clear that he did not intend to sell the horses.
>
> In his memo, Mr. Didio states he is asking only for horse maintenance fees limited to a specific time frame when Mrs. Didio had unrestricted access to the horses. However, Mr. Didio has also included expenses for "pasture rent" to Posey Jones which he testified was for the horse pasture in Blacksburg.
>
> Because the Court is unable to determine which expenses are authentic and legitimate expenses for the horses, the Court declines to award Mr. Did[i]o reimbursement for expenses listed on his exhibit entitled "Horse Care."

- 7 -

The trial court then awarded the horses to husband, giving wife a credit in the marital estate of $750 for half the value of the horses.

We find the trial court abused its discretion in refusing to consider any of the expenses on the "Horse Care" list. The parties and the evidence all agree that the board for the horses, before they were moved to Blacksburg, was $400 a month. The fact that husband paid part of this bill by cleaning out stables, mending fences, and helping care for the animals, rather than flipping hamburgers or selling merchandise, is irrelevant.[3] The evidence clearly proves the $400 was an "authentic and legitimate" expense for the care of a marital asset.

The trial court chastised husband for including additional information on his exhibit. The court could have ignored this additional information, instead of ignoring the entire exhibit and the supporting evidence.[4] Parties often provide courts with more information than they need. Husband asked for credit for the payments made to Mrs. McFarland, which are clearly listed on the exhibit. The trial court should have credited husband with the payments to Mrs. McFarland. If the trial court believed any of the other expenses were uncontested or appropriate, then those amounts should be credited to husband, too.

We hold the evidence did not support the trial court's finding that all the items listed on husband's exhibit, "Horse Care," were not "authentic and legitimate." See Jennings v. Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991) (noting that this Court will not overturn a factual finding of a trial court unless it is plainly wrong or without evidence to support the finding). The trial court abused its discretion in failing to at least consider the $400 payments

---

[3] We find no significant difference between this arrangement and an arrangement where Mrs. McFarland, the owner of the farm, would hand husband $150 for his work at the farm and he would immediately hand that money back to her in payment for the horses' board.

[4] Again, nothing in the record indicates that the trial court had directed the litigants to present the evidence or argument in a particular manner.

that husband made to Mrs. McFarland. We remand for the trial court to reexamine this evidence, to determine the legitimate expenses related to the care of the horses, and to decide how this evidence should affect the distribution of the marital estate and the award of attorney's fees.

### III. Student Loans as Income

Husband argues that the trial court erred in using the amount of his student loan to impute income to him, rather than using the evidence of his actual income. He argues that this imputation affected the court's rulings on child and spousal support, as well as the award of attorney's fees to wife.

Husband presented evidence that he lost his job prior to the separation. The parties had agreed at that time that husband would go back to school to get his veterinary degree. When wife then left the marital home, husband had no income. He did take part-time or temporary jobs on occasion, including a temporary, full-time position during his summer hiatus from school as a veterinarian's assistant, making $1,080 every two weeks. He left that job when he began attending veterinary school full-time at Virginia Tech. At the time of trial, husband was not employed because, according to him, he was taking a full load of classes and could not fit a job into his schedule.

The trial court did not award spousal support to husband. Explaining the rationale for this decision in its letter opinion, the court noted, "Mr. Didio's Income & Expense Statement does not reflect his student loan income in the amount of $28,000 per year, which Mr. Didio testified he used to pay the $14,000 annual tuition as well as his living expenses." The court expressed the belief that the $1,116 per month of income that husband did list on his Statement was derived from "the amount Mr. Didio receives in student loans each year after deducting the amount of his school tuition," even though husband explained in his trial memorandum that the $13,392 yearly figure ($1,116 per month) was the amount he earned in 2004 from part-time and

full-time employment. Later in the letter opinion, the court again seemed to classify husband's student loan as income, saying, "Although not listed on his tax returns, it appears that Mr. Didio received student loans in 2005 to pay for his educational and living expenses." The trial court imputed income to husband in the amount of $28,080 for husband's salary when calculating child support. When awarding attorney's fees to wife, the court noted that husband was arguing that wife should not receive an award of attorney's fees because she "deserted the marriage, leaving Mr. Didio 'with no income.'"

Nothing in Code § 20-108.2(C), which defines income for child support calculations, suggests that loans should be considered as income. A debt, which student *loans* certainly are, is usually considered in equitable distribution under Code § 20-107.3(E)(7), not in calculating the amount of income that a spouse earns or should earn. See Hurt v. Hurt, 16 Va. App. 792, 797 n.2, 433 S.E.2d 493, 496 n.2 (1993) (noting that "borrowed funds" are not income when a spouse takes equity out of his separate property by mortgaging the real estate).[5]

The trial court did not explain how it derived the figure of $28,080 as husband's imputed yearly salary. Wife on brief points out that the court could have derived that figure from the income husband generated while working as a veterinary assistant. Multiplying $1,080 by 26 does equal the yearly income figure used by the court. However, in reaching the decision to impute income and to reject the request for spousal support, the trial court clearly relied on its opinion that the student loan should be considered income. Imputation of income should be based on factors related to the earning capacity of a spouse or parent, not a spouse's ability to obtain a loan. See Mir v. Mir, 39 Va. App. 119, 129-30, 571 S.E.2d 299, 304 (2002) (holding

---

[5] While at least one state legislature has allowed courts to impute income based on student loans when a student parent does not work, see Browning v. Browning, 39 P.3d 631, 634 (Idaho 2001), Virginia has not enacted such a law.

that the trial court erred in its imputation of income to father because he never made the amount imputed and the evidence did not suggest that such a salary was available to father). As the trial court considered husband's student loans as income, it erred in determining the amount of income to impute to husband.[6] Therefore, we remand for the trial court to reconsider the evidence and determine an appropriate amount of income to impute to husband. Once this amount is determined, the trial court should reconsider its failure to award spousal support for a defined duration,[7] the amount of child support awarded, and the award of attorney's fees to wife.

## IV. Spousal Support

Husband argues that the trial court erred in refusing his request for defined duration spousal support because (1) the trial court considered his student loans as income, (2) the trial court again said that husband had "failed to provide the Court with a memorandum or summary illustrating the evidence deemed to be important with regard to each factor," and (3) the trial court found he was "voluntarily" unemployed. We have discussed the issue of student loans as income, see *supra*, § III, and are remanding this case on that error which will require the trial court to reconsider, *inter alia*, the failure to award spousal support. Of necessity, this remand will require that the trial court reevaluate husband's arguments and evidence, which is his second complaint here. Therefore, we do not specifically address husband's second argument above regarding spousal support, as this issue is unlikely to arise on remand.

---

[6] In his question presented, husband does not object to the imputation of income, only to its calculation based on his student loan amounts. As husband listed an income on his Income and Expense Statement, even though he did not have a job, husband in effect asked the trial court to impute income of $1,116 per month to him.

[7] Husband did not ask for permanent spousal support, but instead asked for support until he finished his education.

Husband's argument that the trial court erred in finding he was voluntarily unemployed, however, is likely to arise on remand. Therefore, we will address that argument here. See Medlin v. County of Henrico Police, 34 Va. App. 396, 408, 542 S.E.2d 33, 39 (2001) (addressing two issues "likely [to] arise again on remand").

Husband's argument is premised on his belief that wife is bound by her alleged promise, made while the parties still cohabited, to support husband while he obtained his veterinary degree. Assuming wife did make this promise, such an agreement is not binding after the parties separate. As this Court has clearly held in the past, agreements between spouses are only enforceable if they comply with the statutory dictates. See Gaffney v. Gaffney, 45 Va. App. 655, 665-70, 613 S.E.2d 471, 476-79 (2005). As the agreement is not binding, husband had no right to rely on wife for income. Therefore, the trial court's finding that husband's decision to remain unemployed was "voluntary," especially as wife did not concede that she agreed to support husband financially throughout his time in school, was not in error. See id. at 659, 613 S.E.2d at 473 (noting the deferential standard of review to the factual findings of the trial court).

## V. Visitation

Husband argues that the trial court "effectively turned over jurisdiction to a single named counselor to determine when visitation should occur." He also claims the trial court erred by requiring husband to pay all the expenses associated with his visitation.[8] We find no error in the trial court's rulings on this matter.

---

[8] Husband also argued that the trial court applied Code § 20-108.1, Determination of Child or Spousal Support, instead of Code § 20-124.3, Best Interests of the Child, when resolving the visitation issue. However, husband never made this argument to the trial court. Therefore, he failed to preserve it for appeal. Rule 5A:18. In addition, we note that the trial court did "communicate to the parties the basis of the [visitation] decision . . . orally," as required by Code § 20-124.3.

The parties have a daughter, a teenager, who was diagnosed as bipolar. Because of her condition, the child is more prone to making bad decisions than a typical teenager. Wife, who had primary custody of the daughter during the parties' separation, participated in the child's counseling. Husband participated in counseling when he lived in the Richmond area, but had little contact with Emily Blankenship, his daughter's therapist, after he moved to Blacksburg in September 2004 and started his classes at Virginia Tech. The daughter became concerned about her father's ability to handle her condition.

Blankenship recommended some "marathon" counseling sessions with husband and daughter before allowing overnight visits in Blacksburg, stressing the need for husband to understand and develop strategies for dealing with his daughter's bipolar disorder. Blankenship presented a fairly specific plan for husband's involvement and education, including development of a "safety net" in Blacksburg. Blankenship pointed out that the distance between the child's primary home and Blacksburg created some problems for visitation. Blankenship testified that it would not take long to begin overnight visitation once husband got involved.

As part of a signed agreement reached before the trial date, husband had agreed that the parties would "work out [a visitation schedule] with Emily Blankenship."

The primary concern of a trial court when determining custody and visitation issues is the best interests of the child. Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578 (1991). Husband does not argue that the court's order was not in his daughter's best interests. The evidence certainly supports the court's finding that Blankenship's oversight of and involvement with the visitation schedule was necessary for successful visits for both husband and child. The trial court did not err in its determination that such oversight was in the best interests of the child.

The trial court gave husband visitation "at all reasonable times and places that are approved by Emily Blankenship [the child's therapist] upon completion of a counseling session with Emily Blankenship focused upon dealing with a bipolar adolescent." Husband cites no authority for his position that the trial court improperly "cede[d]" its authority to "a private counselor." See Rule 5A:20(e). The court's decision does not run contrary to the best interests of the child. We hold, therefore, given the particularly special needs of his daughter, the trial court did not err in this situation when requiring that the daughter's therapist approve husband's visitation.

Husband also argues that the trial court erred in ordering that he be responsible for all of the costs associated with his visitation. Again, husband cites no case law in support of his assertion. See Rule 5A:20(e). In addition, as the costs were created by his decision to move to Blacksburg and away from his daughter, the trial court appropriately ordered him to pay the expenses associated with his decision. Again, we find no error.

## VI. Attorney's Fees

Husband argues that the trial court erred in awarding attorney's fees to wife and denying an award to him. Specifically, he claims the use of his student loan amount to calculate his income, see *supra*, § III, affected the court's decision on this issue. He also argues the trial court erred in finding that husband had not "provided specific evidence of his attorney fees" and the court abused its discretion in making the award to wife given the facts in this case.

As this case is already remanded for reconsideration of the attorney's fee award, see *supra*, § III, we need not consider husband's arguments here as the trial court will need to reevaluate all the evidence relevant to the award of attorney's fees anyway and reconsider the equities presented by this case.

VII. Rule 5A:25

Wife argues that this appeal should be dismissed as husband failed to include in the record a transcript of the parties' argument to the trial court on June 23, 2006. She contends that all of the issues on appeal were discussed at that hearing, but she does not explain what information was presented at that hearing that is "germane to the questions presented." See Rule 5A:25(c)(3). We do not find it necessary to have a transcript of the argument on June 23rd in order to address the issues presented.

An appellant has primary responsibility for preparation of the record on appeal. Twardy v. Twardy, 14 Va. App. 651, 654, 419 S.E.2d 848, 850 (1992) (*en banc*). However, in Twardy, the Court went on to explain that this responsibility does not require that all of the proceedings be transcribed:

> Record preparation is "one of the most time-consuming and expensive aspects of appellate procedure." ABA Comm. on Standards of Judicial Review, Standards Relating to Appellate Courts 36 (1977). "Often, the entire transcript of proceedings in the trial court is unnecessary" and preparing one is "wasteful of both money and time." R. Leflar, Internal Operating Procedures of Appellate Courts 17 (1976). Consequently, most court rules permit designation of only portions of the record in an appeal. R. Novak & D. Somerlot, Delay on Appeal 106 (1990). The panel's opinion [in Ferguson v. Commonwealth, 10 Va. App. 189, 390 S.E.2d 782 (1990),] discourages unnecessary record preparation and remains consistent with our rules requiring an appellant to state "whether any transcript or statement of facts, testimony, and other incidents of the case will be filed," Rule 5A:6, and permitting the filing of an abbreviated record, Rule 5A:10(c).

Id. at 654-55, 419 S.E.2d at 850.

Wife does not explain why a transcript of the June 23rd hearing is necessary to resolve any issue before us. All the evidence presented to the trial court is included in the record. The parties' briefs to the trial court, presenting their argument in detail, are in the record. The trial court's opinion letter and final order are in the record. A transcript of the hearing held after the

issuing of the opinion letter, in which objections to the final decree are discussed, is in the record.  Husband's objections to the final order are in the record.  We hold that a transcript of the June 23, 2006 hearing is not necessary to resolve the questions presented by this appeal.

## VIII.  Conclusion

We find that the trial court did not err in awarding wife a divorce based on the parties having lived separate and apart for more than one year and in crafting the provisions for husband's visitation with his daughter, and we affirm on these issues.  However, we also find that the trial court erred in its final decree on the issues of equitable distribution, spousal support, child support,[9] and attorney's fees, and we remand for the trial court to reconsider these issues consistent with this opinion.  Finally, we deny wife's request for an award of her attorney's fees and costs incurred in this appeal.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

---

[9] Neither party requested that child support be reconsidered.  However, the reconsideration of spousal support requires that the child support awarded in the final decree also be reconsidered as that support was calculated using the spousal support figures that we have herein reversed and remanded.  See <u>Dietz v. Dietz</u>, 17 Va. App. 203, 218, 436 S.E.2d 463, 472 (1993).